IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-02754-MSK-KLM

BETTIE WEATHERSPOON,

    Plaintiff,

v.

PROVINCETOWNE MASTER OWNERS ASSOCIATION, INC., and
MSI, LLC,

    Defendants.
_____

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to the Defendants' Motion for Summary Judgment **(# 45)**, Ms. Weatherspoon's response **(# 47, 57)**, and the Defendants' reply **(# 51, 59)**; and Ms. Weatherspoon's Objections **(# 72)** to the Magistrate Judge's March 15, 2010 Order **(# 71)** compelling Ms. Weatherspoon to produce certain documents, the Defendants' response **(# 73)**, and Ms. Weatherspoon's reply **(# 74)**.

**FACTS**

Construing all disputed evidence most favorably to the non-movant, the Court summarizes the operative facts here, and elaborates in more detail as necessary in the analysis. Ms. Weatherspoon commenced this action *pro se* on December 18, 2008. She alleges that she owns a parcel of real property in the Provincetowne subdivision in Fort Collins, Colorado. Provincetowne is a covenant-controlled community, imposing various restrictions on all homeowners for the mutual benefit of the community. Compliance with these restrictions is

1

enforced by the community's homeowners' association, Defendant Provincetowne Master Owners Association, Inc.[1] ("Association"). Ms. Weatherspoon alleges that the various members of the Association "have created a hostile environment within the community because [she] exercised [her] right to file complaints against other members [of the community] for blatant and repeated violations that aggravated her disability, depreciated property values, and violated her peace and enjoyment." Ms. Weatherspoon's claims are somewhat unfocused, but it appears she alleges the following causes of action: (i) the Association discriminated against her on the basis of her race (black), in violation of the Fair Housing Act, 42 U.S.C. § 3604, by failing to take action on complaints that she filed against neighbors from 2003 to 2007,[2] by citing her in 2007 for constructing a deck without prior approval (while a white homeowner was not cited for constructing a similar, unapproved deck), and for citing her in 2008 for "install[ing] timbers along the property lines" of her parcel, which prompted a complaint by a neighbor that the timbers were unattractive and caused damage to his sprinkler system; (ii) the Association discriminated against her on the basis of handicap (mental illness), in violation of the Fair Housing Act, by citing her for violations in 2005 after her house had been broken into and by failing to take action on her complaints that noise from other properties was aggravating her

---

[1] Defendant MSI, Inc. is a management company hired by the Association to assist in carrying out the Association's duties. As best the Court can determine, both Defendants are alleged to be responsible for the same conduct in this action, and thus, the Court's references to the "Association" can be construed to relate to both Defendants.

[2] Ms. Weatherspoon elaborates at length on the focus of many of these complaints: a neighbor that was operating a noisy and, according to Ms. Weatherspoon, unlawful welding business on his property, and had an abandoned car in his yard in violation of neighborhood covenants.

disability[3]; (iii) the Association violated 42 U.S.C. § 3617 by retaliating against her for having invoked rights under the Fair Housing Act, by ignoring her complaints, by prohibiting her from reviewing Association records during normal business hours and charging her excessively for making copies of those records, by "conspiring" with certain homeowners to install surveillance cameras directed at her, and by filing an unfounded lawsuit against her in order to threaten and intimidate her; and (iv) the Association deprived her of rights secured under the First Amendment to the United States Constitution's "freedom of religion" clause, apparently in violation of 42 U.S.C. § 1983, by citing her in March 2008 and again in August 2008 for violations relating to an 8-foot tall cross she had erected in her yard.

The Association moves **(# 45)** for summary judgment on all of Ms. Weatherspoon's claims, arguing: (i) the claims in this action are barred by the doctrine of *res judicata*, having previously been bought by Ms. Weatherspoon as counterclaims in a 2008 action in the Colorado County Court for Larimer County and adjudicated in favor of the Association; (ii) the claims for race and disability discrimination in violation of the Fair Housing Act, 42 U.S.C. § 3604, fail because the prohibition on discrimination applies only to the sale or rental of a dwelling, not to conduct that occurs, as here, after a homeowner has obtained property; (iii) any claim for religious discrimination fails because, as a matter of law, homeowners' associations are not required to grant religious accommodations to otherwise religion-neutral policies.

---

[3]This claim includes allegations that Ms. Weatherspoon "was denied the same privileges, terms, and conditions as White homeowners." The operative factual allegations in this claim appear to overlap with those underlying the race discrimination claim in the first cause of action, and thus, the Court does not understand the second claim to assert acts of race discrimination beyond those asserted in the first claim.

## ANALYSIS

Until recently,[4] Ms. Weatherspoon pursued this action *pro se*, and all of the filings under consideration with regard to this motion were filed in that capacity. Thus, the Court reads her filings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in her use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve Ms. Weatherspoon of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat her according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

### A. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that

---

[4]On April 23, 2010, after briefing of the summary judgment motion was complete, counsel entered an appearance **(# 80)** on behalf of Ms. Weatherspoon. In that entry of appearance, counsel also requested that "this matter be scheduled for a status conference . . . to determine the dates of any responses to defense motions that may be due and whether the Court will grant extensions of time to file amendments to any *pro se* motions . . ." A docket annotation by the Clerk's Office **(# 81)** indicates that "Counsel [was] informed to file [this] request in motion format using the correction motion event." To date, Ms. Weatherspoon's counsel has neither filed that request as a motion or otherwise sought to supplement Ms. Weatherspoon's *pro se* filings.

must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of

5

law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## B. *Res Judicata*

The doctrine of *res judicata* is an affirmative defense that requires the party invoking it to set forth facts sufficient to satisfy all of its elements. *Nwosun v. General Mills Restaurants, Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997). The party invoking it must show: (i) there was a prior lawsuit that ended with a judgment on the merits; (ii) the parties to the current lawsuit are either identical to on in privity with the parties to the prior suit; (iii) the prior suit was based on the same causes of action asserted in the current suit; and (iv) the non-movant had a full and fair opportunity to litigate the current claims in the prior suit. *Id.* Determining whether the "same causes of action" were asserted in the prior action is done in a "transactional" sense: all claims or legal theories of recovery arising out of the same transaction, event, or occurrence must be presented in the same suit, and the failure to present them bars the party from asserting them in subsequent litigation. *Id.*

The facts put forward by the Association demonstrate that, on October 2, 2008, the Association commenced a proceeding against Ms. Weatherspoon in Larimer County Court, alleging that she had constructed a large wooden cross in her back yard without prior approval from the Association. The Association alleged that such construction without prior approval violated the terms of the neighborhood's covenants, and sought injunctive relief directing Ms. Weatherspoon to remove the cross.

Ms. Weatherspoon filed an Answer to that action, alleging, among other things, that "Jurisdiction is not proper because this matter involves [the Association's] violation of [her] civil rights (Freedom of religion) and the Fair Housing Act, 42 U.S.C. § 3604 . . .," as well as

6

retaliation under the Fair Housing Act. She contended that she "logged 100's of complaint[s that] the association did not enforce." She requested that that the court "dismiss this injunction . . . based on the following evidence submitted: . . . (2) The Plaintiffs are retaliating against [her] for filing complaints with HUD; (3) the Plaintiffs allowed an industrial business to operate and aggravated [her] disability for over 4 years without interference; . . . (5) the Plaintiff are acting with extreme prejudice against a member who is African American, suffers from mental illness and practice a religion that is not to their approval or understanding; [and] . . . (10) The Plaintiff's order is requesting total removal of the Cross which violations [her] Constitutional rights and Fair Housing Act." Separately, Ms. Weatherspoon filed a "counterclaim for damages," seeking, among other things, damages for emotional distress arising from the Association's "intentional and unwarranted use of selective enforcement," damages for "interference of legal activities," damages for "filing a frivolous claim, brought with an attempt to harass, retaliate, and postponement of pending legal matters," and damages for breach of the community's covenants.

By Order dated March 24, 2009, the Larimer County Court ruled in favor of the Association. The first portion of the court's order discuss the court's finding that relating to the timeliness of the Association's actions and the enforcement procedure that the Association had undertaken with regard to the cross. The court concluded that the cross was constructed in violation of the community's covenants. The court then turned to Ms. Weatherspoon's counterclaim, and this Court will recite the County Court's findings on this matter verbatim:

> The Defendant has also included a Counterclaim against the Plaintiff and its representatives for mental anguish, embarrassment, humiliation, pain and suffering sustained in the intentional and unwarranted use of selective enforcement; for defamation of character; for interference of religious activities and other social events; for attempts to harass, retaliate and postponement of

7

pending legal matters, for breach of contract and for removal and sanction of Debra J. Oppenheimer, Esq., for failing to conduct a reasonable inquiry into the facts of the case before filing a lawsuit.

Because the Court has already determined that the Plaintiff has a valid cause of action that is not barred by the Statute of Limitations and that the Defendant is in violation of the Covenants and other provisions of the HOA, many of the allegations contained in the Counterclaim fail as a result of that determination. The Court does specifically wish to address certain issues that have not previously been discussed, however. As it relates to selective enforcement, the Court finds no evidence of this. The Defendant failed to follow procedures relating to prior approval of the construction of improvements on three previous occasions. Even so, once the Defendant filed the proper documentation regarding these other three matters, her requests were approved. It appears from the log of the Plaintiff that it has consistently looked into possible violations as set forth in Plaintiff's Exhibit 27. As an example, it appears that a total of 125 violations were issued in the 13 months period between April 2007 and May 2008. There were also 57 [Design Review Requests] processed between January 2006 and May 2008. That does not require that every violation be sustained or even pursued upon proper investigation but it does indicate that there is no selective enforcement going on here. As explained by various witnesses, the HOA's concerns are different than violations of the City Code. As in the situation of Mr. Miller, a hearing was held by the Board regarding both allegations of conducting an in-garage welding business that was too loud, according to the Defendant, and a vehicle that Defendant claimed was not being moved every 72 hours. As explained by Mr. Kaine, a large number of neighborhood residents signed a petition that the vehicle was being moved regularly and provided testimony that the business was not too loud, based on their observations. The Defendant apparently did not appear at that hearing. The Board found that, based on the evidence presented, that the allegations of the Defendant had not been sustained. The fact that a representative of the City did ultimately observed the business on one occasion where it was too loud for City code does not suggest selective enforcement but rather that the Board acted on the information it had available to it.

Finally, the Court has reviewed the Trial Briefs submitted by the Plaintiff regarding the Defendant's claims of religious discrimination in this context and alleged misconduct by counsel

> for the Plaintiff. As to the former, the Court finds that the Federal
> Fair Housing Act, 42 U.S.C. Section 3601, et seq., and the
> Colorado Fair Housing Act, C.R.S. Section 24-35-501, et seq.,
> contain no requirement of religious accommodation. Only if a
> restriction is so severe that it results in some type of constructive
> eviction might it be actionable. See Bloch v. Frischholz, 533 F.3d
> 562 (2008). In our case, the particular action taken by the Plaintiff
> seeks to enforce several religion-neutral rules prohibiting
> "unsightly conditions" and nuisances and prohibiting the
> construction of any improvement without HOA approval. The
> Defendant's access to housing has not been violated. As such, the
> actions of the Plaintiff do not violate the Fair Housing Act and are
> not discriminatory in nature. . . .

Ms. Weatherspoon responds to the Association's motion by contending that the Larimer County Court did not purport to adjudicate any of the federal claims asserted in this action because it lacked jurisdiction to do so. However, as the Association points out, the Fair Housing Act allows for state and federal courts to exercise concurrent jurisdiction over claims of housing discrimination or retaliation.[5] 42 U.S.C. § 3613(a)(1)(A). Without an argument that the Larimer County Court lacked jurisdiction to do so, Ms. Weatherspoon apparently concedes that "the County ruled on the matter of discrimination involving Fair Housing violation" even though "they clearly did not have jurisdiction."

This Court finds that the Association has carried its burden of establishing certain elements of the defense of *res judicata*: the undisputed facts show that there was a prior litigation, and that the parties to this action are the same parties that appeared in the prior action.

---

[5]Ms. Weatherspoon argues that the Larimer County Court's ruling could not possibly have adjudicated her Fair Housing Act claims because the court required her to pay the Association's costs and fees in bringing the action. She states, without supporting citation, that "Under the Fair Housing Act, attorney fees cannot be accessed to a complainant for filing a claim." However, 42 U.S.C. § 3613(c)(2) provides that, in a civil action brought under the Fair Housing Act, the court "may allow the prevailing party . . . a reasonable attorney's fee and costs." The statute contains no language prohibiting such awards against complaining parties.

The Court is not convinced, however, that the Association has established the remaining two elements: that the claims in the prior action are the same as the claims here, and, by extension, that Ms. Weatherspoon had a full and fair opportunity to litigate the claims asserted here in the prior litigation. There can be little dispute that Ms. Weatherspoon's Answer in the Larimer County action made reference to precisely the same claims that she asserts here, stating that "this matter involves plaintiff violation of Defendant civil rights (Freedom of religion) and the Fair Housing Act." Nor is it disputed that Ms. Weatherspoon also filed a "Counterclaim" in that action seeking damages. But a close reading of both the Answer and the Counterclaim indicate that Ms. Weatherspoon invoked the federal claims in her Answer to explain why "jurisdiction is not proper in this matter," not as an attempt to assert them as counterclaims. The Counterclaim bolsters this conclusion: it makes no explicit reference to the Fair Housing Act, racial or disability discrimination, or retaliation as the basis for a requested award. It does request damages as a result of the Association's "interference with religious activities," echoing Ms. Weatherspoon's First Amendment claim here.

Similarly, the Larimer County Order does not purport to make any particular findings with regard to complaints of race or disability discrimination or retaliation under the Fair Housing Act, or in any other capacity. The Order does mention the Fair Housing Act, but only in the context of finding that the Act does not require religious accommodation. Thus, the court found that the Association's demand that Ms. Weatherspoon remove the cross did not constitute actionable discrimination on the basis of religion under the Fair Housing Act, but even that claim is distinct from the claim asserted in this action: Ms. Weatherspoon's religious discrimination claim here is predicated on violation of the First Amendment (and, by extension, 42 U.S.C. §

10

1983), not the Fair Housing Act. Thus, because this Court finds that the Larimer County Court did not purport to adjudicate the same claims presented here, the Defendant's invocation of the doctrine of *res judicata* is not dispositive of all claims here.

That being said, it is undisputed that the Larimer County Court was squarely presented with, and made conclusive factual findings regarding, many of the <u>factual</u> issues that underlie Ms. Weatherspoon's claims in this case. In this respect, the doctrine of collateral estoppel applies to the Larimer County Court's factual findings. Collateral estoppel is similar to *res judicata*, but operates to preclude parties from relitigating "issues," not "claims," that were previously presented and determined. *Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009). Thus, once the Larimer County Court determined an issue of fact necessary to its judgment on a particular claim, that decision precludes relitgation of the same factual issue in a suit by Ms. Weatherspoon on a different cause of action. *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1520 (10th Cir. 1990).

Ms. Weatherspoon's claims of race discrimination, disability discrimination, retaliation each spring from the same factual premises: (i) the Association refused to investigate or act upon her complaints against others, and did so for discriminatory/retaliatory reasons; and (ii) the Association cited her for violations when it did not cite similarly-situated neighbors who violated the same covenants, and did so for discriminatory/retaliatory reasons. Both of these allegations can be combined under the general heading of "selective enforcement." Ms. Weatherspoon clearly alleged instances of selective enforcement in her Answer to the Association's suit in Larimer County, noting the Association's failure to act on her complaints concerning the welding business, her "100's of complaint[s] the association did not enforce," and the fact that

11

she was cited for the cross while "throughout the community there are a number of unsightly conditions, structures and objects that have not went this course." The issue of whether the Association was selectively enforcing its rules against Ms. Weatherspoon but not others was key to the Association's request for an injunction, as the party requesting the injunction must show that the balance of the equities tips in its favor. As a result, the Larimer County Court squarely addressed the issue of selective enforcement in its ruling, finding that "[a]s it relates to selective enforcement, the Court finds no evidence of this." Thus, because Ms. Weatherspoon had a full and fair opportunity to litigate the question of whether the Association was selectively enforcing its rules with regard to her, and because the Larimer County Court conclusively adjudicated that question as part of its ruling, the doctrine of collateral estoppel precludes Ms. Weatherspoon from relitigating the issue of selective enforcement in this proceeding.[6]

Once this Court accepts the Larimer County Court's finding that Ms. Weatherspoon was not subjected to selective enforcement by the Association, the major predicate of her discrimination and retaliation claims evaporates. If the Association did not selectively enforce its covenants in its dealings with her, then, by definition, she was treated the same as other neighbors; if she was treated the same as others, she could not have been discriminated against because of her race or disability, nor retaliated against. Thus, although the Association is not entitled to summary judgment by operation of the doctrine of *res judicata*, the doctrine of

---

[6]This Court understands the Larimer County Court's rejection of the "selective enforcement" argument in general to encompass specific instance of selective enforcement alleged by Ms. Weatherspoon in her Complaint here. Thus, her contention that white neighbors were not cited for building an unapproved deck as she was, or her contention that the Association somehow treated her differently than others with regard to the cross or the "timbers" she installed were equally found by the Larimer County Court to be without merit.

collateral estoppel nevertheless prevents Ms. Weatherspoon from establishing the very facts on which her discrimination and retaliation claims are premised.

Similarly, the doctrine of collateral estoppel disposes of Ms. Weatherspoon's First Amendment claim as well. Putting aside the Court's grave doubt that Ms. Weatherspoon could demonstrate that the Association was somehow a "state actor," such that their actions constituted actionable governmental, not inactionable private, infringement of her constitutional rights, *see Barr v. Camelot Forest Conservation Assn., Inc.*, 153 Fed.Appx. 860, 862 (3d Cir. 2005) (unpublished), the Court finds that the Larimer County Court expressly found that the Association was enforcing a generally-applicable, religion-neutral covenant when it demanded that she remove the cross from her yard. Once again, this is a factual finding that Ms. Weatherspoon had a full and fair opportunity to litigate, and thus, is not subject to relitigation in this action. Assuming that Ms. Weatherspoon's First Amendment claim is premised upon the Free Exercise clause, the Larimer County Court's factual finding that the Association was enforcing a religion-neutral covenant of general applicability prevents Ms. Weatherspoon from establishing a First Amendment claim, even though enforcement of that covenant had an incidental effect of burdening her religious exercise. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993); *Corder v. Lewis Palmer School Dist.*, 566 F.3d 1219 1232 (10th Cir. 2009).

Accordingly, the Court finds that the doctrine of collateral estoppel operates to give preclusive effect to the factual findings made by the Larimer County Court, Ms. Weatherspoon is unable to establish the very facts that given rise to her claims here. The Association is therefore entitled to summary judgment. The Court need not reach the Association's remaining

13

arguments, nor need it consider Ms. Weatherspoon's Objections to the Magistrate Judge's discovery ruling.

## **CONCLUSION**

For the foregoing reasons, the Defendants' Motion for Summary Judgment **(# 45)** is **GRANTED**. The Clerk of the Court shall enter judgment in favor of the Defendants on all claims in this action and close this case.

Dated this 2nd day of September, 2010

**BY THE COURT:**

*Marcia S. Krieger*
_____

Marcia S. Krieger
United States District Judge